# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **CHICAGO FREEDOM SCHOOL, TONY ALVARADO-RIVERA, JACQULYN HAMILTON,** | ) ) ) | **No:** |
| **Plaintiffs,** | ) ) ) | |
| v. | ) ) | **Judge** |
| **CITY OF CHICAGO; SUPERINTEDENT OF THE CHICAGO POLICE DEPARTMENT DAVID O'NEILL BROWN; DEPARTMENT OF BUSINESS AFFAIRS AND CONSUMER PROTECTION INVESTIGATORS JOSEPH W. SNEED, IRA NAVARRO, #338, RICHARD ROE AND CHICAGO POLICE OFFICERS JOHN DOES,** | ) ) ) ) ) ) ) ) ) | **JURY DEMAND** |
| **Defendants.** | ) ) | |

## COMPLAINT

1. Plaintiff, the Chicago Freedom School, ("CFS"), is a well-respected and beloved youth centered not for profit organization that provides critical support and educational programs to young people in the City of Chicago. On May 30, 2020, City of Chicago Officials —including members of the Chicago Police Department ("CPD") and investigators from the City's Department of Business Affairs and Consumer Protection ("BACP") — conducted an illegal raid of CFS's premises in retaliation for CFS's support of the young people who, on that day, were protesting the unrelenting police violence, anti-Black racism and white supremacy in Chicago and throughout the U.S. Chicago officials then imposed upon CFS an unlawful cease and desist order that subjects its employees to the threat of arrest for engaging in legal, constitutionally protected activity.

2. CFS and Plaintiffs Tony Alvarado-Rivera, CFS's Executive Director, and Jacqulyn Hamilton, CFS's Wellness Director, by and through their attorneys, file this complaint

1

against the City of Chicago, Superintendent Brown and individually named CPD officers and BACP investigators. This lawsuit seeks to enforce the Plaintiffs' rights under the First and Fourth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983, and Illinois state law, including the Illinois Civil Rights Act of 2003, 740 ILCS 23/5. Plaintiffs seek declaratory and injunctive relief so that CFS employees can continue their vitally important work supporting the development of Chicago's young people without the threat of arrest and further retaliatory action. The individual Plaintiffs individually seek monetary damages against the City of Chicago and individual City employees for the harm they incurred as a result of the City's unlawful actions.

## JURISDICTION AND VENUE

3. The actions of the Defendants violated the United States Constitution, the Civil Rights Act, 42 U.S.C. § 1983, as well as Illinois law. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a) and over the Plaintiffs' state law claims pursuant to the court's supplemental jurisdiction, as codified in 28 U.S.C. § 1367(a).

4. Venue is proper in this district under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiffs' claims also occurred in this judicial district.

## PARTIES

5. Plaintiff Chicago Freedom School ("CFS"), inspired by the Civil Rights era freedom schools in Mississippi, is a youth centered not for profit organization founded in 2007. CFS provides a space where young people and adult allies can study the work of past movements, deepen their understanding of current social problems, build new coalitions, and develop strategies for change. CFS supports new generations of critical and independent

thinking young people who use their unique experiences and power to create a just world. CFS has an office at 719 S. State Street, Chicago, Illinois and it has a history of serving as a safe space for young people of color in the downtown area. It has frequently opened its doors to serve as a warming center, healing space, and a place where young people can decompress and rest in times of crisis.

6. Plaintiff Tony Alvarado-Rivera is the newly hired Executive Director of the CFS. On May 30, 2020, he was present at CFS's premises.

7. Plaintiff Jacqulyn Hamilton is the Wellness Director at the CFS. On May 30, 2020, she was present at CFS's premises.

8. Defendants Joseph W. Sneed, Ira Navarro and Richard Roe are investigators in the Department of Business Affairs and Consumer Protection ("BACP"), which is an agency of the City of Chicago. These Defendants were on duty and acting under color of law and within the scope of their employment with the City of Chicago at the time of this incident. They are sued in their individual capacities.

9. Defendant Does were, at the time of this incident, duly appointed Chicago police officers. These Defendants were on duty, acting under color of law and within the scope of their employment with the City of Chicago at the time of this incident. They are each sued in their individual capacities.

10. Defendant David O'Neill Brown is the Superintendent of the CPD. At all times relevant to the events at issue in this case, Defendant Brown was employed by the CPD. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Defendant Brown promulgated practices of the CPD and is responsible for supervising all CPD officers and managing all operations at the CPD. He is sued here in his official capacity.

11. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois. It is authorized under the laws of the State of Illinois to maintain the CPD, which acts as the City's agent in the area of municipal law enforcement and the BACP which acts as the City's agent in the area of regulation and enforcement of municipal codes. The CPD and BACP Defendants are agents of the City of Chicago. The City is ultimately responsible for the actions of both the CPD and the BACP. It is the employer and principal of the Defendants Sneed, Navarro, Roe, the Doe Police Officers and Superintendent Brown.

**FACTUAL ALLEGATIONS**

12. On May 30, 2020, the Chicago Freedom School was open serving as a drop-in center in the midst of the massive demonstrations in Chicago's downtown area attended by thousands of people who were protesting the recent police murders of George Floyd, Breonna Taylor, Tony McDade and other Black people in the City of Chicago and across the U.S.

13. The demonstrations on May 30th began early in the day with several thousands of people joining car caravans at different locations around the City of Chicago, driving downtown to converge at Federal Plaza in Chicago, Illinois at 2 p.m.

14. Prior to 2 p.m., several hundreds of protestors also gathered at the Federal Plaza on foot and shortly thereafter there were several demonstrations throughout the downtown area of Chicago, including on Lake Shore Drive, State Street, across from Trump Tower on Wacker Drive and along Michigan Avenue in the River North Area.

15. The demonstrations were attended and monitored by a heavy police presence, with many officers clad in riot gear and carrying batons. At various points in the demonstration, members of the CPD became aggressive and at times violent, hitting people with their batons and causing several protestors serious injuries requiring medical attention. CPD injured a

4

number of young people affiliated with CFS.

16. At 5:30 p.m., CFS announced on Facebook that it was open and providing people a place for "quick release and restoration," access to a bathroom, phone chargers, as well as pizza, stating it was prioritizing space and services for young people and people of color. CFS suggested that if people were interested in donating, they could make a small donation at their website to facilitate CFS ordering pizza and bottled water since they were out of stock.[1]

17. Shortly thereafter, at around 6 p.m., the Chicago Transit Authority ("CTA") suspended both its subway and bus service in the downtown area of Chicago.[2]

18. Throughout the afternoon and evening, City employees also shut down portions and then the entirety of Lake Shore Drive in the downtown area and there were several other road closures which resulted in a lack of taxi and ride share drivers driving to the downtown area.

19. Minutes before 7 p.m. that day, CFS posted again on Facebook thanking people for helping CFS open up. The post also thanked people for donating which enabled CFS employees and volunteers to purchase pizza, snacks and water. The post indicated that CFS was committed to remaining open until 9 p.m.

20. The CFS's 7 p.m. post also included photos depicting that CFS was serving commercially bought take-out pizza in take-out boxes, and that they were offering juice packs, Clif bars, bags of peanuts and other snacks. In the background of the food, there were signs stating, "Black Lives Matter" and "Free Them All."

---

[1] CFS also announced it was providing individuals with masks and advised people to practice social distancing.

[2] The Office of Emergency Communications ("OEMC") announced *via* tweet that there were no CTA trains or buses running in the Chicago Loop or River North area. In order for people to access CTA transportation, they would have to walk miles away from the Loop and River North areas to 22nd and Wentworth, Grand Avenue and Halstead or North and Clark.



21. None of the food items depicted in the pictures or distributed at CFS were prepared or packaged at the CFS.

22. Scores of young people, the majority of whom were Black and Brown participants in the protests, visited the CFS for rest, services and the supplies being offered by the CFS. A few of the young people received bandages and antiseptic to tend to wounds they sustained during the demonstrations.

23. At approximately 8:20 p.m. on May 30th, Mayor Lori Lightfoot announced at a press conference that she was imposing a curfew for the City of Chicago set to begin that very same night at 9 p.m. The curfew remained in effect until 6 a.m. the following day.

24. Mayor Lightfoot did not issue a tweet announcing the 9 p.m. curfew until 8:40 p.m. that same evening. Chicago's OEMC did not issue a tweet announcing the 9 p.m. curfew until 9:04 p.m. that same evening.

25. Many individuals who were present at the protests did not receive any notice of

6

the curfew until after it went into effect.[3]

26. At some point in the evening on May 30th, the bridges over the Chicago River on Michigan and Wabash Avenues, State and Dearborn Streets were raised, splitting protestors from one another and preventing people from being able to get home if they lived south of the river.

27. In light of suspended CTA service, road closures, lack of taxis and ride share services transporting people from the downtown area, and the sudden imposition of a curfew, several people in downtown area, including scores of youth who live on the south and west sides, had no viable ways of getting home.

28. In response, CFS reached out to supportive community members and asked for people to transport youth home from CFS's premises home.

29. Young people at the CFS were using social media to inform others that the CFS was arranging for such rides, in addition to providing youth access to food, water and other supplies.

30. At approximately 11 p.m. that night, individual Defendants from the BACP drove to 719 S. State with a Chicago Police Squad, whose mars lights were on, and parked next to the building.

31. Upon their arrival at the building, Defendant Does, who were in CPD uniforms, armed, and wearing their riot helmets, walked up to Plaintiff Hamilton who was present at the front entrance of the building.

---

[3] The curfew remained in effect until June 7, 2020. According to the Chicago Sun Times, over 400 people were arrested for curfew violations and of those 400, 75% of the people arrested were Black. *See* Matthew Hendrickson & Matt Kiefer, *Blacks make up 75% of those charged with violating city curfew, data shows*, Chicago Sun Times (Jun 14, 2020), https://chicago.suntimes.com/crime/2020/6/14/21286741/chicago-city-curfew-african-american-arrest-aclu.

32. Defendant Does demanded Plaintiff Hamilton allow them to enter the building and into the CFS's premises.

33. A Defendant Doe claimed that they received a report that CFS was housing and feeding protestors.

34. Plaintiff Hamilton tried to talk with the Defendant Does and explain the services provided by CFS and ask why they needed to search the CFS's premises.

35. The Defendant Does grew increasingly aggressive, repeatedly demanding to enter the building and insisting that Plaintiff Hamilton had to let them in.

36. At one point, Defendant Sneed arrived at the entrance of the building and walked in between Plaintiff Hamilton and the Defendant Does and began talking with Hamilton.

37. Defendant Sneed told the Defendant Does to calm down and that he would handle this.

38. As Plaintiff Hamilton was asking questions of Defendant Sneed and continuing to refuse the individual Defendants entry, one of the Defendant Does attempted to lunge at Plaintiff Hamilton.

39. Plaintiff Alvarado-Rivera joined Plaintiff Hamilton at the front entrance of the building and attempted to speak with the individual Defendants.

40. BACP Defendants informed Plaintiffs Alvarado-Rivera and Hamilton that the CFS was violating its business license and they needed to inspect CFS's premises immediately. They also re-iterated that they received reports that the CFS was housing and feeding protestors.

41. Plaintiffs Alvarado-Rivera and Hamilton repeatedly tried to explain to the individual Defendants that the CFS was a not for profit, and it was not a commercial business, to no avail.

42. Plaintiff Alvarado-Rivera also tried to explain the purposes of the CFS and the fact that the CFS does not house any individuals.

43. The individual Defendants communicated in an insistent, disrespectful and intimidating manner. They refused to listen to Plaintiff Alvarado-Rivera's description of the CFS's activities and demanded entry to the CFS's premises.

44. The Defendant Does continued their aggressive push to enter the building and the CFS's premises declaring words to the effect of let's go, we need to get moving, and we've been out here long enough.

45. The individual Defendants did not have a warrant to enter and search the CFS's premises.

46. There was no probable cause, reasonable suspicion or legal justification to warrant the individual Defendants search of the CFS' premises.

47. Neither Plaintiffs Hamilton, Alvarado-Rivera nor any other person present at CFS prepared any food or drink that was provided to any individuals present at CFS on May 30th.

48. BACP defendants, accompanied by Defendant Does, gained access and searched the CFS's premises, taking pictures of the interior of the CFS's premises, including the pizza boxes and all the pictures on the wall.

49. The individual Defendants did not find any evidence that employees or volunteers of the CFS were preparing food at the CFS.

50. Despite the lack of any evidence that food was being prepared at the CFS, Defendants Sneed and Navarro, issued an order to "CEASE AND DESIST" to the CFS in which they falsely claimed that the CFS failed to comply with Chi. Mun. Code 4-4-10 by "Preparing and serving food on the premises not described in the license for which a Retail Food

Establishment Code 1106 is required."[4]

51. The order to "CEASE AND DESIST" also threatened that the CFS would be charged between $500.00 and $1,000.00 every single day if the CFS continued in the alleged violations of the Chi. Mun. Code.

52. The "CEASE AND DESIST" order also directed the Superintendent of the Police to "arrest any and all agents, and employees of the CFS if found engaging in in the business or occupation of Preparing and serving food on premises, not described on license without the required Retail Food Establishment license, properly displayed on said premises." The order indicated that "[t]his order shall remain in full force and effect until the required license has been procured."[5]

53. As the individual Defendants were leaving the premises, a Defendant from the BACP threatened Plaintiffs Alvarado-Rivera and Hamilton that if they returned and found the food observed on the premises, which included pizza slices located in the restaurant-bought pizza boxes, that Plaintiffs Alvarado-Rivera and Hamilton would be arrested.

54. The individual Defendants' actions, including their aggressive behavior, illegal search, threats of future arrest and shutting down CFS alarmed, frightened and intimidated Plaintiffs Alvarado-Rivera and Hamilton causing them mental distress, anguish, and anger.

55. As part of the CFS's programming, it regularly provides food to its youth and participants. This food is not prepared and served by the CFS nor is it sold to people who

---

[4]Pursuant to the Chi. Mun. Code 4-8-10, a "Retail Food Establishment" is defined as "any . . . place or establishment occupied and used as a place of business for the purpose of serving, storing, selling, offering for sale . . . any article of food, drink . . . ultimately used for or intended to be used for human consumption."

[5] While the individual Defendants were demanding entry into the CFS's premises, and later during the search, individuals down the street were breaking into and removing items from the 7-11 and Urban Grocers. The individuals Defendants did not nothing to stop them.

participate in their programs. Rather, it is purchased by employees and volunteers at restaurants and stores and provided to youth and others in the CFS's space for free.

57. Distribution of commercially prepared food is a routine practice at youth organizations, including at the Boys and Girls Clubs of Chicago, YMCAs, and Boy or Girl Scout troops.

57. Upon information and belief, the BACP has not issued cease and desist orders to other youth organizations in the City of Chicago for providing their youth commercially prepared food even though they do not have a Retail Food Establishment License, nor has the BACP required other youth serving organizations to secure Retail Food Establishment Licenses.

58. While BACP members and other Chicago Health Officials search other restaurants and food establishments to ensure they are abiding by the Chi. Mun. Code, they frequently do not do it with the threatening and intimidating presence of uniformed, armed Chicago Police Officers. Rather, they provide notice to the establishment and set a date and time when the inspection will occur, none of which occurred in this instance.

59. Given all these circumstances of the BACP investigators and Defendant Does' search of the CFS's premises and the issuing of the unjustifiable "Cease and Desist" order, it is evident that the Defendants were retaliating against the CFS for its support of young Black and Brown protestors who were demonstrating against racist police violence.

**Allegations against the City of Chicago and the Superintendent of the Chicago Police Department**

60. As fully described above, on May 30, 2020, the City of Chicago imposed a number of restrictions on protestors with the full knowledge that the protesters' demands included an end to racist, repressive, corrupt policing and focused on the anti-Black racism and disparities in the use of excessive force—including use of lethal force and arrest rates in the city

of Chicago.

61. Upon information and belief, City of Chicago agents monitor the social media accounts of activist organizations that criticize the CPD, including, but not limited to the CFS. Many of the groups monitored by the City of Chicago are led by Black and Brown people.

62. The City's raid of CFS garnered widespread news coverage.[6] In addition, through counsel, CFS sent BACP correspondence requesting that it rescind the cease and desist order. High level City of Chicago Officials—including those at the BACP and the CPD — are therefore aware of the cease and desist order imposed against the CFS. The City has failed to take any action to rescind the order or otherwise cure the Plaintiffs' injuries.

63. Further, CPD Superintendent David Brown, who is directly empowered to enforce the cease and desist order, has failed to take any action to prohibit CPD officers from enforcing the unlawful cease and desist order imposed upon the CFS.

**Count I**
**42 U.S.C. § 1983 First Amendment Claim**
**(Plaintiff CFS against the City of Chicago for Declaratory and Injunctive Relief)**

64. Plaintiff CFS re-alleges all of the preceding paragraphs and incorporates them in this count.

65. Plaintiff CFS was engaged in lawful First Amendment activity when providing support and space to protestors who were demonstrating against racist police violence on May

---

[6] Justin Laurence, *The Chicago Freedom School Offered Food, Water And Rest To Weary Protestors Trapped Downtown – And The City Cited Them For It*, Block Club Chicago (Jun 8, 2020, 8:10 AM CT), https://blockclubchicago.org/2020/06/08/the-chicago-freedom-school-offered-food-water-and-rest-to-weary-protesters-trapped-downtown-and-the-city-cited-them-for-it/; Tonya Francisco, *City cites Chicago Freedom School after they provided meals to protestors in Loop*, WGN9 (Jun 8, 2020, 6:21 PM CT), https://wgntv.com/news/chicago-news/city-cites-chicago-freedom-school-after-they-provided-meals-to-protesters-in-loop/; Maya Dukmasova, *Police abolitionists find fuel in the protests*, Chicago Reader (Jun 1, 2020), https://www.chicagoreader.com/chicago/george-floyd-protests-police-abolition/Content?oid=80349691.

30, 2020 and posting about its activities on social media.

66.     The actions of Defendants Sneed, Navarro, Roe and Does described above violate the Plaintiffs' rights to freedom of speech, political expression and assembly guaranteed by the First Amendment to the United States Constitution, in that CFS was abruptly prevented from further exercising its rights and suffered retaliation for having exercised its rights.

67.     The Defendant City of Chicago engages in an ongoing violation of the CFS's First Amendment rights by leaving the cease and desist order in effect against it thereby subjecting CFS employees to the threat of arrest if they engage in activities essential to the CFS's mission and fines against the CFS that could effectively shut the organization down as a small not for profit.

61.     Unless restrained by order of this Court, the CFS' First Amendment rights will continue to be violated. CFS seeks injunctive and declaratory relief against the City to prevent the continued violation of its constitutional rights, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just

### Count II
### 42 U.S.C. § 1983 First Amendment Claim
### (All Plaintiffs against all Defendants for Damages)

68.     Plaintiffs re-allege all of the preceding paragraphs and incorporates them in this count.

69.     Plaintiffs CFS, Alvarado-Rivera and Hamilton were engaged in lawful First Amendment activity when providing support and space to protestors who were demonstrating against racist police violence on May 30, 2020.

70.     The actions of Defendants Sneed, Navarro, Roe and Does described above violate the Plaintiffs' rights to freedom of speech, political expression and assembly guaranteed by the

13

First Amendment to the United States Constitution, in that Plaintiffs were abruptly prevented from further exercising their rights and suffered retaliation for having exercised their rights.

71. The City of Chicago further infringes on the Plaintiffs' rights guaranteed by the First Amendment to the United States Constitution in threatening to shut down CFS and arrest Plaintiffs Alvarado-Rivera and Hamilton for engaging in protected legal activity.

72. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

73. As a result of the unjustified and unconstitutional conduct of the Defendants, Plaintiffs suffered damages, including but not limited to, ongoing infringement of their First Amendment rights, caused the loss of speech and expression, as set forth more fully above, actual damages, humiliation, pain, fear and emotional distress.

74. The actions of these Defendants were the direct and proximate cause of the violations of Plaintiffs' First Amendment rights. Plaintiffs seek judgment against Defendants Sneed, Navarro, Roe and Does for compensatory damages jointly and severally, and punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

**Count III**
**42 U.S.C. § 1983 Fourth Amendment Claim**
**(Plaintiff Alvarado-Rivera and Hamilton against all Individual Defendants for Damages)**

75. Plaintiffs Alvarado-Rivera and Hamilton re-allege all of the preceding paragraphs and incorporate them in this count.

76. Defendants Sneed, Navarro, Roe and Does' search of the CFS's premises without a warrant, probable cause, reasonable suspicion or legal justification to do so, violated the

14

Plaintiffs' rights guaranteed by the Fourth Amendment to the United States Constitution to be free from an unreasonable illegal search.

77. The aforementioned actions of Defendants Sneed, Navarro, Roe and Does were the direct and proximate cause of the constitutional violations set forth above.

78. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

79. As a result of the unjustified and unconstitutional conduct of the Defendants, Plaintiffs suffered damages, including but not limited to, infringement of their Fourth Amendment rights, as set forth more fully above, actual damages, humiliation, pain, fear and emotional distress.

80. The actions of these individually named Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth Amendment rights. Plaintiffs Alvarado-Rivera and Hamilton seek judgment against Defendants Sneed, Navarro, Roe and Does for compensatory damages jointly and severally, and punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

**COUNT IV**
**42 USC §1983 Claim for Conspiracy**
**(All Plaintiffs against all Individual Defendants for Damages)**

81. Plaintiffs re-allege all of the preceding paragraphs and incorporates them in this count.

82. The actions of Defendants Sneed, Navarro, Roe and Does as set forth above constituted a conspiracy and/or joint action under the First and Fourth Amendments to illegally search CFS, issue a baseless Cease and Desist order to Plaintiffs CFS, Alvarado-Rivera and

Hamilton, that threatens their liberty and seeks to prevent them from exercising their Constitutional Rights to freedom of speech and assembly.

83. Each of the Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means. Each of the Defendants named in this count took concrete steps to enter into an agreement to unlawfully violate the Plaintiffs' First, Fourth and Fourteenth Amendment rights.

84. The actions of Defendants Sneed, Navarro, Roe and Does in conspiring to deprive Plaintiffs CFS, Alvarado-Rivera and Hamilton of their rights were the direct and proximate cause of the violations of Plaintiffs CFS, Alvarado-Rivera and Hamilton's rights as set forth above.

85. Each individual Defendant is therefore liable for the violation of Plaintiffs' rights by any other individual Defendant.

86. As a direct and proximate result of the Defendants' conspiracy, Plaintiffs suffered damages, including mental distress, anguish, humiliation, violations of their First, Fourth and Fourteenth Amendment rights, and legal expenses, as set forth more fully above.

## COUNT V
### Illinois State Law Claims for Violations of the Illinois Constitution
### (All Plaintiffs against all Defendants for Damages)
### (Plaintiff CFS against the City of Chicago for Declaratory and Injunctive Relief)

87. Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count.

88. The actions taken by Defendants City of Chicago, Sneed, Navarro, Roe and Does denied Plaintiffs their state constitutional rights to be free from an unreasonable search; to expression and assembly in a peaceable manner; to due process and equal protection of the laws, as provided by the Illinois Constitution, Article I, sections 1, 2, 4, 5, and 6, and were a direct and proximate cause of Plaintiffs' injuries as set forth above.

89. The actions of these Defendants were the direct and proximate cause of the violations of Plaintiffs' Illinois State Constitutional Rights. Plaintiffs CFS, Alvarado-Rivera and Hamilton seek judgment against the Defendants City of Chicago, Sneed, Navarro, Roe and Does for declaratory and injunctive relief, compensatory damages jointly and severally, and punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

## COUNT VI
## Illinois State Law Claim for Intentional Infliction of Emotional Distress
### (Plaintiffs Alvarado-Rivera and Hamilton against all Individual Defendants for damages)

90. Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count.

91. The conduct and actions of Defendants Sneed, Navarro, Roe and Does set forth above were extreme and outrageous, were done intentionally, willfully and wantonly, and/or knowing that there was a high probability that their conduct would cause Plaintiffs Alvarado-Rivera and Hamilton severe emotional distress as set forth above.

92. As a direct and proximate cause of the extreme and outrageous conduct of Defendants Sneed, Navarro and Does, Plaintiffs Alvarado-Rivera and Hamilton were injured and experienced severe emotional distress constituting intentional infliction of emotional distress under Illinois State law.

93. Plaintiffs Alvarado-Rivera and Hamilton seek judgment against Defendants Sneed, Navarro, Roe and Does for compensatory damages plus the costs of this action and such other relief as this Court deems equitable and just.

## COUNT VII
### Illinois State Law Claim for Conspiracy
### (All Plaintiffs against all Individual Defendants for Damages

94. Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count.

95. Defendants Sneed, Navarro and Does, together reached an understanding, engaged in and continue to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to violate Plaintiffs CFS's, Alvarado-Rivera's and Hamilton's rights guaranteed by the Illinois constitution and to intentionally inflict severe emotional distress on Plaintiffs Alvarado-Rivera and Hamilton.

96. In furtherance of this conspiracy or conspiracies, Defendants Sneed, Navarro, Roe and Does, together with their un-sued co-conspirators, committed the overt acts set forth above.

97. The conspiracy or conspiracies were and are continuing in nature.

98. As a direct and proximate result of the Defendants' conspiracy, Plaintiffs suffered damages, including mental distress, anguish, humiliation, violations of their First and Fourth Amendment rights, and legal expenses, as set forth more fully above.

## COUNT VIII
### Violation of the Illinois Civil Rights Act of 2003, ILCS 23/5
### (All Plaintiffs against all Defendants)

99. Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count.

100. The Defendants targeted the CFS and its employees for a regulatory enforcement action with the knowledge that CFS serves predominately Black and Brown young people and supports the leadership development of organizers and activists who advocate against the racially motivated and disparate policies and practices of the CPD.

101. The Defendants are aware of the fact that other youth groups throughout the City of Chicago—and particularly those youth groups that serve predominately white youth—provide youth participants with commercially prepared food, pizza and other food items as part of their programming. These groups are not subject to any form of enforcement action, searches or seizures.

102. The criteria and methods that the BACP applied to target the CFS with a raid and regulatory enforcement action created a disparate impact on Black and Latinx youth and their allies, in violation of the Illinois Civil Rights Act of 2013, section 5(a)(2).

## COUNT IX
### Illinois State Law *Respondeat Superior* Claim

103. Plaintiffs re-allege the foregoing paragraphs 1-63 and 88-102.

104. Defendants Sneed, Navarro, Roe and Does were, at all times material to this complaint, employees of the Defendant City of Chicago, were acting within the scope of their employment; and their acts, which violated state law, are directly chargeable to the Defendant City under state law pursuant to *respondeat superior*.

105. Plaintiffs CFS, Alvarado-Rivera and Hamilton demand judgment against the City of Chicago for any and all compensatory damages awarded on their state law claims, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT X
### 745 ILCS 10/9-102 Claim Against Defendant City of Chicago

106. Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count.

107. Defendants Sneed, Navarro, Roe and Does committed the acts alleged above under color of law and in the scope of employment as employees of the City of Chicago.

108. Pursuant to 745 ILCS § 10/9-102, and otherwise pursuant to law, Plaintiffs CFS, Alvarado-Rivera and Hamilton demand judgment against Defendant City of Chicago in the amount awarded to the Plaintiffs against any and all Defendants as compensatory damages, attorneys' fees, costs and interest, and for whatever additional relief this Court deems equitable and just.

## JURY DEMAND

Plaintiffs CFS, Alvarado-Rivera and Hamilton demand a trial by jury on all counts, pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution.

Respectfully Submitted,

Dated: June 25, 2020

By: /s/ Joey L. Mogul
Joey L. Mogul
One of the Plaintiffs' Attorneys

Joey L. Mogul
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070
joeymogul@peopleslawoffice.com

Sheila Bedi
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611-3609
312-503-8576
sheila.bedi@law.northwestern.edu

Counsel for the Chicago Freedom School, Tony Alvarado-Rivera and Jacqulyn Hamilton